UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALBERT REGINALD ROBINSON,

        Plaintiff,

v.

R. DESROCHERS et al.,

        Defendants.
_____/

Case No. 2:18-cv-156

Honorable Paul L. Maloney

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Horton, Desrochers, Batho, and Dihle.

## Discussion

    I.    Factual Allegations

Plaintiff Albert Reginald Robinson is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe,

Michigan. Plaintiff sues the following MDOC employees at URF: Sergeant R. Desrochers, Residential Unit Manager (RUM) R. Batho, Warden Connie Horton, Deputy Warden (unknown) Dihle, Prisoner Counselor C. Newton, Correctional Officer (unknown) Olmstead, and Correctional Officer R. Benson.

Plaintiff alleges that he was transferred to housing unit H of URF in September 2017. In September and October 2017, he had conflicts with Officers Olmstead and Benson because they would not allow him to watch his preferred television programs in the unit day room. He wanted to watch channels 52, 53, and 18. Channel 52 is VH1, channel 53 is Black Entertainment Television (BET), and channel 18 is "BET Her." (Compl., ECF No. 1, PageID.11.) Plaintiff alleges that he and 75% of the prisoners in H unit are black. Apparently, the shows on these channels are "geared for [his] culture." (*Id.*, PageID.14.)

On October 23, 2017, Plaintiff went to the TV room and saw that the television channel had been changed from channel 52 to channel 45, the Home and Garden TV channel. He asked Officer Benson to change it back to channel 52. Benson told him to speak with "Mrs. O." (*Id.,* PageID.11.) Plaintiff then asked Officer Olmstead to change the television back to channel 52. She told him, "No, you people are monopolizing the TV. . . . When I'm here this TV is white. . . . [Y]ou have been watching since I came in to work, and you can only watch 'that stuff' for two hours at a time.'" (*Id.*) Plaintiff alleges that Olmstead refuses to allow Plaintiff to watch television shows "geared to [his] culture" for more than two hours per day, but she will allow white inmates to watch "Game of Thrones," a show with an almost exclusively white cast, from 8:00 am to 8:00 pm.

That evening, Plaintiff was called into the unit office by Defendant Benson. Benson called Plaintiff a "T.V. bully" and told him that he is "upsetting the order that we (Olmstead and

2

Benson) have created." (*Id.*, PageID.12.) She accused Plaintiff of creating a "disturbance." (*Id.*) Afterward, Plaintiff wrote a letter to Warden Horton "explaining the situation." (*Id.*) Plaintiff never received a response. However, Officer Benson allegedly told Plaintiff that "the R.U.M. and Warden Horton know[] about this situation and nothing[']s going to change." (*Id.*)

Plaintiff continued to complain about the issue by sending a letter to the United States Department of Justice Civil Rights Division. He gave a copy of this letter to Defendant Horton and to the block representative for the Warden's Forum meeting in January and February 2018.

In January and February 2018, Officer Olmstead allegedly threatened to "move" Plaintiff if he kept complaining. Plaintiff asked her to stop threatening him. She told him, "If you don't like it, file a grievance." (*Id.*, PageID.13.) She claimed that grievances "don't work" on her, and that Plaintiff's letter to the warden "did nothing but piss me off." (*Id.*)

In March 2018, Plaintiff asked Olmstead to close the back door to the unit because Plaintiff and "twelve black inmates" whose cells were near the door were cold and freezing; it was 25 degrees outside that afternoon. (*Id.*) Olmstead told Plaintiff that she would "tell the ARUS to move you up front." (*Id.*) Plaintiff contends that he later learned that a white inmate asked to keep the door open. According to Plaintiff, Olmstead "always caters to white inmates." (*Id.*) Plaintiff wrote a grievance against Olmstead for this incident and for threatening to move him.

On March 9, 2018, Officer Benson conducted a "shake down" of Plaintiff's cell and told Plaintiff, "if you want to keep writing grievances, I'll keep writing tickets until you're gone." (*Id.*, PageID.14.) That same day, Benson issued Plaintiff a misconduct ticket for destruction of property occurring two months earlier and for insolence about comments that Plaintiff never made. (*Id.*; *see* Misconduct Report, ECF No. 1-11, PageID.31.) Plaintiff also

3

received a "false" misconduct ticket for being out of place from Defendant Olmstead. (*Id.*; *see* Misconduct Report, ECF No. 1-12, PageID.32.) Plaintiff alleges that he was afraid of being moved, so he pleaded guilty to the ticket from Olmstead.

Plaintiff asserts that he was moved to another unit in retaliation for his grievances. On March 12, an officer told Plaintiff to pack up his things and move to D unit. When Plaintiff arrived at D unit with his belongings, PC Newton told him "I received a call about you and your grievances, I won't put up with it." (*Id.*, PageID.7.) Newton then spoke with Plaintiff in a "disrespectful" manner, pointing her finger in Plaintiff's face and forcing him to unpack. She claimed that he stole four toilet paper rolls from H unit. She wrote a misconduct ticket on him for theft and stated, "Grieve that!" (*Id.*) Plaintiff contends that he did not steal the toilet paper rolls. He received them when they were passed out in the other unit. There is no rule requiring him to turn them in when moving to a new unit. Plaintiff contends that Newton wrote the ticket in retaliation for Plaintiff's grievances.

The misconduct report for the alleged theft identified Plaintiff as the offender using his name and identification number near the top of the report, but the body of the report describing the alleged misconduct used other identification numbers when referring to the offender. (*See* Misconduct Report, ECF No.1-1, PageID.21.)

Sergeant Desrochers reviewed the misconduct ticket with Plaintiff the following day. Plaintiff pointed out the multiple prisoner identification numbers mentioned in the report. Desrochers crossed out the numbers in the body of the report and initialed the changes. Plaintiff alleges that prison policy required Desrochers to return an incorrect misconduct ticket to Defendant Newton for rewriting. Desrochers did not do so. Desrochers promised to "go easy" on Plaintiff if he pleaded guilty. Plaintiff refused to do so.

Plaintiff received a hearing on the misconduct charge on March 20, 2018. RUM Batho conducted the hearing. Plaintiff explained that he was not guilty, that the misconduct ticket had been altered by Desrochers, and that the ticket was written in retaliation for Plaintiff's protected conduct. Nevertheless, Batho found Plaintiff guilty of the misconduct and sanctioned him with six days of loss of privileges.

After receiving the misconduct sanction, Plaintiff filed a grievance on Defendants Olmstead, Benson, Newton, and Desrochers, and Batho, alleging a conspiracy to retaliate against him. The grievance was rejected by Defendant Dihle, and that decision was upheld by Defendant Horton. Plaintiff contends that Dihle and Horton were also conspiring with the other defendants.

Plaintiff also appealed the misconduct ticket by Defendant Newton. That appeal was denied by Defendant Dihle.

Based on the foregoing allegations, Plaintiff claims that Defendants retaliated against him for filing grievances, in violation of the First Amendment, discriminated against him in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment, and deprived him of due process.

As relief, Plaintiff seeks compensatory and punitive damages. He also asks that the false misconduct(s) be removed from his prison file.

II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Warden Horton

Plaintiff alleges that Warden Horton is liable because she refused to properly supervise the other defendants, and did not take action to correct the conduct of other officials in

6

response to Plaintiff's complaints and grievances. These allegations do not state a claim against Defendant Horton.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Horton engaged in any active unconstitutional behavior.

Plaintiff also contends that Horton conspired with other defendants to violate his constitutional rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must

plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Plaintiff's allegations of conspiracy are conclusory and speculative. He merely describes a number of discrete incidents that occurred over a period of time involving multiple individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. Accordingly, for all the foregoing reasons, Plaintiff does not state a claim against Defendant Horton.

### B. Sergeant Desrochers

#### 1. Due Process

Plaintiff contends that Sergeant Desrochers deprived him of due process by failing to permit Plaintiff to have a fair misconduct hearing. This claim fails for several reasons.

First, Desrochers did not conduct the misconduct hearing. He simply reviewed the misconduct report with Plaintiff and made handwritten changes to it with his initials next to the changes. There is no possible way that these changes could have deprived Plaintiff of due process in connection with the misconduct charges, because the changes would have been apparent to the hearing officer reviewing the report. Also, Plaintiff could have raised the issue at the misconduct hearing.

Second, and more importantly, Plaintiff did not have a right to due process in connection with his misconduct charges. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*,

438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

There was no protected property or liberty interest at stake in Plaintiff's misconduct proceedings. Prison disciplinary proceedings do not implicate a prisoner's protected liberty interests unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). As a result of his misconduct conviction, Plaintiff lost privileges for six days. This sort of sanction is not an atypical and significant hardship. See *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (14 day loss of privileges is not atypical and significant). Moreover, Plaintiff does not allege that the sanction will affect the duration of his sentence. *See Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009) (holding that a disciplinary sanction in Michigan does not necessarily affect the length of a prisoner's confinement). Accordingly, Plaintiff cannot state a due process claim.

2. Retaliation

Plaintiff also claims that Desrochers refused to return the misconduct report to Newton for rewriting in retaliation for Plaintiff's grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to

prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Desrochers retaliated against him.

Moreover, Plaintiff has not alleged an adverse action. For an action to be adverse, it must be "*capable* of deterring a person of ordinary firmness" from engaging in protected conduct; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, Plaintiff does not allege that Desrochers did anything other than refuse to return a misconduct report to the reporting officer. This is not an adverse action. It did not meaningfully impact Plaintiff in any way. Thus, Plaintiff does not state a retaliation claim against Desrochers.

3. Failure to follow policy

To the extent Plaintiff contends that Desrochers failed to comply with prison policy, that failure does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Thus, Defendant Desrochers' alleged failure to follow MDOC policy is not enough to state a claim under § 1983.

4. Conspiracy

Plaintiff also implicates Desrochers in a conspiracy to violate his rights. Like the similar claim against Defendant Horton, this claim is wholly conclusory.

In short, Plaintiff does not state a claim against Defendant Desrochers.

**C. RUM Batho**

Defendant Batho found Plaintiff guilty of the misconduct charge filed by Defendant Newton. As indicated with respect to Defendant Desrochers, Plaintiff does not state a due process claim against Batho because no protected interests were at stake in his misconduct proceedings. Moreover, Plaintiff's contention that Batho retaliated against him and conspired with other officials is wholly conclusory. Accordingly, Plaintiff does not state a claim against Defendant Batho.

### D. ADW Dihle

Defendant Dihle rejected a grievance that Plaintiff filed and rejected an appeal from Plaintiff's conviction for a misconduct. As indicated with respect to Defendant Horton, Dihle is not liable for the conduct of other officials. Rejecting a prisoner grievance does not make Dihle personally liable under § 1983 for the conduct alleged in the grievance. Moreover, as Plaintiff's misconduct proceedings did not implicate any protected interests, Dihle did not deprive Plaintiff of due process. Finally, Plaintiff's assertion that Dihle retaliated against him for filing grievances and conspired with other officials is wholly conclusory. Thus, Plaintiff does not state a claim against Defendant Dihle.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Horton, Desrochers, Batho, and Dihle will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.

Dated: November 15, 2018  /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge