UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALBERT ROBINSON #602278,                     Case No. 2:18-cv-00156

                Plaintiff,                     Hon. Paul L. Maloney
                                            U.S. District Judge

    v.

CANDACE NEWTON, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

State prisoner Albert Robinson filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 17, 2018. Robinson's claims revolve around disputes at Chippewa Correctional Facility (URF) about which television channels would be shown in Robinson's housing unit and whether a door allowing cold air into the unit would be open or closed. Robinson alleges that these decisions were made on the basis of race. He also says that Michigan Department of Corrections (MDOC) officials retaliated against him for complaining by writing misconduct tickets against him. Robinson asserts violations of his rights under the First and Fourteenth Amendments.

The Defendants in the case are Prisoner Counselor (PC) Newton, and Corrections Officers (COs) Olmstead and Benson.[1]

This report and recommendation addresses Defendants' motion for summary judgment and Robinson's two motions to compel discovery.[2]

**First**, on July 22, 2019, Defendants filed a motion for summary judgment. (ECF No. 29, PageID.128.)  Defendants argue (1) that Robinson failed to properly exhaust his claims against them, and (2) that Robinson's claims against COs Olmstead and Benson are barred by the doctrine of qualified immunity.  In response, Robinson generally argues (1) that he properly exhausted his grievances, (2) that he was denied the opportunity appeal his misconduct tickets, (3) that he did raise the issue of retaliation during his misconduct hearings, and (4) that the doctrine of qualified immunity does not apply in this case.  (ECF No. 36, PageID.330.)

**Second**, on November 22, 2019, Robinson filed a motion to compel discovery. (ECF No. 38, PageID.365.)  He sought discovery of warden forum minutes for a two-year period and "'any and all policies, directives or instructions concerning MDOC employee job description, prisoner treatment.'" (ECF No. 39, PageID.368 (citing ECF No. 39-1, PageID.372).)  In response, Defendants argued that Robinson's request (1)

---

[1]    In a screening opinion and order, the Court dismissed Robinson's claims against Defendants Desrochers, Batho, Horton, and Dihle for a failure to state a claim.  (ECF No. 9, PageID.75; ECF No. 10, PageID.87.)

[2]    On August 1, 2019, Robinson also filed a motion requesting the Court to identify his cognizable claims.  (ECF No. 34, PageID.326.)  Section III contains a table identifying Robinson's remaining claims.  The undersigned will issue a separate order denying this motion as moot.

exceeds the scope of discovery as ordered by the Court, (2) is unnecessary because Robinson already responded to Defendants' motion, and (3) is overly burdensome on the Defendants. (ECF No. 39, PageID.367.)

**Third**, on December 31, 2019, Robinson filed his second motion to compel discovery. (ECF No. 40, PageID.385.) Robinson sought the same information requested in his first motion. In response, Defendants directed the Court's attention to their earlier response. (ECF No. 41, PageID.387.)

As will be explained below, the undersigned concludes that Robinson failed to properly exhaust many of the claims in this case, but not all of them. The undersigned respectfully **recommends dismissal of the following claims** due to Robinson's failure to exhaust his administrative remedies: (1) Robinson's conspiracy claims, (2) his individual First Amendment retaliation claims against Newton and Olmstead, (3) his First Amendment retaliation claim against Benson and Olmstead relating to Robinson's move to the D housing unit, (4) his individual First Amendment retaliation claim against Olmstead relating to her issuing him a false misconduct ticket, (5) his individual Fourteenth Amendment equal protections claims against Newton, and (6) his Fourteenth Amendment retaliation claim against Olmstead involving race-based decisions on which television channels to watch. If the Court adopts this recommendation, the **only remaining claims will be**: (1) Robinson's equal protection claim against Olmstead for deciding to open a door on the basis of race on March 3, 2018, and (2) Robinson's retaliation claim against Benson for writing a misconduct tickets against him on March 9, 2018.

## II.      Additional Relevant Procedural History

This case was initially referred to Prisoner Early Mediation, but failed to settle. (ECF Nos. 11, PageID.88; ECF No. 15, PageID.107; ECF No. 18, PageID.114.) Defendants filed a motion for summary judgment on July 22, 2019. (ECF No. 29, PageID.128.) On August 1, 2019, the Court issued a case management order (CMO) setting a deadline of September 15, 2019 for the close of discovery limited to the issue of exhaustion, an October 14, 2019 deadline for Robinson to file a response to Defendant's motion, and an October 28, 2019 deadline for Defendants to file a reply to Robinson's response. (ECF No. 35, PageID.329.)

## III.     Summary of Plaintiff's Allegations

Robinson's claims revolve around disputes about which television channels would be shown in Robinson's housing unit and whether a door allowing cold air into the unit would be open or closed. Robinson alleges that these decisions were made on the basis of race, in violation of the Fourteenth Amendment. He also says that Defendants retaliated against him for complaining by writing misconduct tickets against him, in violation of the First Amendment.

On September 22, 2017, Robinson was moved into the H housing unit at URF, where Defendants Olmstead and Benson work. (ECF No. 1, PageID.11.) Robinson says he began having trouble with Olmstead and Benson in about late September because they were preventing him from watching several specific television channels: VH1 (channel 52), Black Entertainment Television (BET) (channel 53), and BET Her (channel 18). (*Id.*) Robinson alleges that on October 23, 2017, he asked Benson and

Olmstead to change the television to channel 52.  (*Id*.)  Olmstead allegedly refused and said, "when I am here this TV is white."  (*Id*.)  Robinson claims that Olmstead allows white prisoners to watch televisions shows of their choice for long periods of time.  (*Id*.)

The next day, Benson allegedly told Robinson that Robinson was creating a disturbance in the housing unit because of his television channel complaints.  (ECF No. 1, PageID.12.)  That night, Robinson wrote a letter to Warden Horton to explain the situation.  (*Id*.)  Robinson claims that no response came from the Warden, but Benson told him that the Warden was aware of the situation and that nothing was going to change.  (*Id*.)

Robinson says that at some point in December 2017, he sent a letter to the Department of Justice's Civil Rights Division to complain about the situation in H unit.  (*Id*.)  He also claims to have sent a copy to the Warden and to the cell block representative so that the representative could discuss the issue at the Warden's forum.  (*Id*.)  Robinson says that during January and February 2018, Olmstead and Benson threatened to move Robinson if he continued to complain.  (ECF No. 1, PageID.12.)

Robinson says that on March 3, 2018, he asked Olmstead if he could close the back door of the housing unit due to the cold temperatures.  (*Id*., PageID.13.)  She declined because a white inmate had asked her to open the door.  (*Id*.)  Robinson says that Olmstead told him that he and the other black inmates should wear their coats and hats.  (*Id*.)

Robinson says that on March 9, 2018, Benson searched Robinson's personal property and wrote Robinson a false Class II misconduct ticket.  (ECF No. 1, PageID.14.)  At that time, Benson told Robinson that he would keep issuing Robinson misconduct tickets if Robinson kept writing grievances.  (*Id*.)  An hour later, Robinson claims to have received another false Class II misconduct ticket from Olmstead.  (*Id*.)  Robinson acknowledges that he pled guilty to the second misconduct ticket, but he alleges that he did so out of fear of retaliation from Olmstead.  (*Id*.)

On March 12, 2018, Robinson was moved from the H housing unit to the D housing unit.  (*Id*.)  Robinson says that Defendant Newton issued Robinson another false Class II misconduct ticket after he entered the D housing unit.  (ECF No. 1, PageID.15.)

As noted in the Court's screening opinion, Robinson's Verified Complaint contains First Amendment retaliation, Fourteenth Amendment equal protection, and Fourteenth Amendment due process claims.[3]  (ECF No. 9, PageID.79.)  The table below lists Robinson's claims and a summary of the alleged facts supporting the claims.

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Olmstead | 14th Amendment Equal Protection | 10/22/2017 | Olmstead alleged denied Robinson the ability to watch certain television channels because he is African-American.  (ECF No. 1, PageID.12.) |
| 2 | Olmstead | 14th Amendment Equal Protection | 3/3/2018 | Allegedly Olmstead refused to close the backdoor of the housing unit near Robinson's and other black inmates' |

---

[3]     Robinson's Fourteenth Amendment due process claims were dismissed in the Courts initial screening order.  (ECF No. 10, PageID.87.)

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | | | beds because a white inmate requested the door to remain open. (ECF No. 1, PageID.13.) |
| 3 | Benson | 1st Amendment Retaliation | 3/9/2018 | Benson allegedly conducted an impermissible search of Robinson's belongings and then issued Robinson a false Class II misconduct ticket for destruction or misuse of property and insolence.  In doing so, Benson allegedly told Robinson that he would keep issuing Robinson misconduct tickets if Robinson kept filing grievances.  (ECF No. 1, PageID.14.) |
| 4 | Olmstead | 1st Amendment Retaliation | 3/9/2018 | An hour after receiving a false misconduct ticket from Benson, Olmstead allegedly issued Robinson a false Class II misconduct ticket for being out of place. (ECF No. 1, PageID.14.) |
| 5 | Olmstead | 1st Amendment Retaliation | 3/12/2018 | Robinson claims that he was moved from the H housing unit to the D housing unit because Olmstead and Benson were retaliating against him for writing grievances.  (ECF No. 1, PageID.14.) |
| 6 | Benson | 1st Amendment Retaliation | 3/12/2018 | Robinson claims that he was moved from the H housing unit to the D housing unit because Olmstead and Benson were retaliating against him for writing grievances.  (ECF No. 1, PageID.14.) |
| 7 | Newton, Olmstead, and Benson | 14th Amendment Equal Protection, Conspiracy | 3/12/2018 | When Robinson was transferred from the H Housing Unit to the D Housing Unit, Newton issued Robinson a false Class II misconduct ticket for receipt of stolen property and theft.  Robinson also claims that the issuance was a conspiracy by Newton, Olmstead, and Benson to violates his rights under the 14th Amendment.  (ECF No. 1, PageID.7.) |
| 8 | Newton, Olmstead, and Benson | 1st Amendment Retaliation, Conspiracy | 3/12/2018 | Robinson also claims that Newton conspired with Defendants Olmstead and Benson when she issued him the Class II misconduct for receipt of stolen property and theft.  The conspiracy and her conduct were allegedly motived by Robinson's grievances.  (ECF No. 1, PageID.7.) |

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 9 | Newton | 14th Amendment Equal Protection | 3/12/2018 | When Robinson was transferred from the H Housing Unit to the D Housing Unit, Newton issued Robinson a false Class II misconduct ticket for receipt of stolen property and theft.  Robinson claims that the issuance of the ticket violates his rights under the 14th Amendment.  (ECF No. 1, PageID.7.) |
| 10 | Newton | 1st Amendment Retaliation | 3/12/2018 | When Robinson was transferred from the H Housing Unit to the D Housing Unit, Newton issued Robinson a false Class II misconduct ticket for receipt of stolen property and theft.  Robinson claims that the issuance of the ticket was motivated by retaliation for a grievances that he wrote.  (ECF No. 1, PageID.7.) |

## IV.  Summary of Grievances Filed by Robinson and Pursued Through Step III

The grievances the parties identified as relevant to Robinson's claims are summarized in the table below.

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 30-3, PageID. |
|---|---|---|---|---|
| URF-18-03-0886-27a | Newton | On 3/20/18, misconduct ticket involving Newton was not processed according to policy | Rejected at Step I because misconduct decisions are non-grievable issues; rejection upheld through Step III | 195-199 |
| URF-18-03-0804-28c | Benson and Olmstead | On 3/9/18, Benson strip searched his cell and gave him a contraband ticket for a 1/16/18 incident; various allegations against Benson and Olmstead from fall '17, including not being allowed to watch certain TV programs; various threats by Olmstead | Rejected at Step I as containing many unrelated issues; rejection upheld through Step III | 210-215 |
| URF-18-03-0694-17a | Olmstead | Olmstead was being racist, intimidating, threatening, and retaliatory in her actions regarding Robinson wanting to | Denied at Step I; denial upheld through Step III | 226-230 |

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 30-3, PageID. |
|---|---|---|---|---|
| | | have a door open | | |
| URF-18-03-0805-28a | Olmstead | Olmstead's retaliatory and threatening conduct toward Robinson has not improved. | Rejected at Step I as duplicative of URF-18-03-694-17a; rejection upheld through Step III | 205-209 |

## V.      Summary of Relevant Misconduct Tickets Issued to Robinson

In their motion for summary judgment, Defendants identified several misconduct appeals that Robinson filed with MDOC. They claim that a review of these misconduct appeals will demonstrate that Robinson failed to exhaust his administrative remedies. These misconduct appeals are summarized below.

| Misconduct Charge | Allegation | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| Destruction or misuse of property and insolence | Contraband removal was dated 1/16/18 in a scrivener's error; Robinson stated "This is because I grieve you f[*]ckers" at the hearing. (ECF No. 30-5, PageID.279-280.) | 3/9/18 | 3/12/18 | Found guilty. | Filed an appeal based upon retaliation, but the appeal was denied because Robinson did not include substantive evidence to warrant a rehearing. (ECF No. 36-2, PageID.361.) |
| Out of place | Robinson pleads Guilty. (ECF No. 30-5, PageID.287-288.) | 3/9/18 | 3/12/18  Waived the right to a hearing on 3/18/18 | Pled guilty and found guilty. | N/A |
| Receipt of Stolen property; theft | Robinson claims a case of mistaken identity. (ECF No. 30-5, PageID.289-290.) | 3/12/18 | 3/20/18 | Found guilty. | Filed an appeal based upon retaliation, but the appeal was denied because Robinson did not include substantive evidence to warrant a rehearing. (ECF No. 36-2, PageID.355.) |

9

## VI.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VII.    Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

10

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination,

11

misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate

cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[4], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file

---

[4]     Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## VIII.  Motion for Summary Judgment: Defendant's Exhaustion Argument

First, Defendants concede that claim two (shown in table starting on page 6 above) is properly exhausted.  Thus, this claim may go forward.  The undersigned

---

[5]      In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

concludes (1) that there is no genuine issue of material fact that claims one, four, five, six, seven, eight, nine, and ten (shown in Section III, in table starting on page 6) are not properly exhausted, and (2) that there is a genuine issue of material fact as to whether claim three was properly exhausted.

### A. *Claims that Robinson Failed to Exhaust*

Based on the grievances and misconducts identified by the parties as relevant, there is no genuine issue of fact that Robinson failed to properly exhaust claims one, four, five, six, seven, eight, nine, and ten.

As shown in the table in Section IV, Robinson did not raise the allegations that support claims one, five, and six in a grievance and that he pursued through Step III. Because there are no grievances supporting claims one, five, and six, there is no genuine issue of fact that the claims are not properly exhausted.

There is also no genuine issue of material fact that claim four is not properly exhausted. The claim is based on the allegation that, on March 9, 2018, Olmstead issued Robinson a false misconduct ticket for being out of place. (ECF No. 1, PageID.14.) Robinson complained about this incident in grievance **URF-18-03-0804-28c**.[6] (ECF No. 30-3, PageID.210-215.) Because claim four is a First Amendment

---

[6] This grievance was properly rejected at Steps I, II, and III for containing multiple unrelated issues. Grievances that are rejected because they fail to satisfy policy also fail to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009). Therefore, even if the grievance process applied to claim four, the claim was not properly exhausted through grievance **URF-18-03-0804-28c**. In this grievance, Robinson complains about (1) Benson's search of his bunk, (2) Benson threatening him for writing grievances and issuing him a false misconduct ticket, (3) Robinson's disagreement about what he purportedly said during earlier misconduct hearings, (4) his receipt of multiple false misconduct tickets, (5) Olmstead denying

retaliation claim governed by *Siggers*, Robinson needed to raise the issue of retaliation during his misconduct hearing and then appeal on the basis of retaliation. 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones*, 2014 U.S. Dist. LEXIS at *13-17.  Robinson failed to do this.  (ECF No. 30-5, PageID.287-288.) Indeed, Robinson (1) pled guilty to the misconduct and (2) waived his right to a misconduct hearing. (ECF No. 30-5, PageID.287.)  Consequently, the undersigned concludes that there is no genuine issue of material fact that claim four is not properly exhausted.

As summarized above in the table in Section III, claims seven, eight, nine, and ten are claims against Newton individually or in a conspiracy for violations of Robinson's First or Fourteenth Amendment rights.   Robinson, however, only complains about Newton in one grievance – **URF-18-03-0886-27a** – and was issued only one misconduct from Newton.  As summarized in Section IV, the grievance was rejected at Step I for containing non-grievable issues and the rejection was upheld through Step III.   Grievances that are rejected because they fail to satisfy policy also fail to demonstrate proper exhaustion.  *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009).   Consequently, any claim against Newton that is not a retaliation claim governed by *Siggers* cannot be considered properly exhausted.  652 F.3d at 693-94.

---

him access to certain television channels, (6) Olmstead refusing to close the barracks door, (7) Warden Horton knowing about Benson's and Olmstead's conduct but not stopping it, and (8) a general history of racism from the MDOC employees.  (ECF No. 30-3, PageID.213, 215.)

In addition, any First Amendment retaliation claims against Newton that are governed by *Siggers* requires Robinson to have raised the retaliation issue during his misconduct hearing and then appeal his guilty finding based on retaliation to properly exhaust the claims.  *Siggers*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones*, 2014 U.S. Dist. LEXIS at *13-17.  As the record shows, Robinson failed to raise the issue of retaliation during his misconduct hearing (ECF No. 30-5, PageID.289), but raised the issue of retaliation on appeal (ECF No. 36-2, PageID.355).  Because Robinson failed to raise the issue of retaliation during his misconduct hearing, no First Amendment retaliation claims against Newton were properly exhausted.  As such, there is no genuine issue of material fact that claims six, seven, eight, and nine are not properly exhausted.

### B. *Claim that Defendants Concede that Robinson Properly Exhausted*

For two reasons, the undersigned concludes that claim two is properly exhausted.  First, Defendants concede that grievance **URF-18-03-0694-17a** and the claim within it are properly exhausted.  (ECF No. 30, PageID.143.)  Second, the record shows that grievance **URF-18-03-0694-17a** complains about Olmstead refusing to close the barracks door because Robinson is African-American, and that the grievance was denied on the merits through Step III.  (ECF No. 30-3, PageID.226-230.)

### C. *Claim that Robinson Properly Exhausted*

The undersigned concludes that claim three is properly exhausted.  Claim three is a First Amendment retaliation claim against Benson for allegedly issuing Robinson a false misconduct ticket on March 9, 2018.  As such, the claim is governed

by *Siggers*.    Robinson was required to raise the issue of retaliation during his misconduct hearing and then appeal on this basis.    652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones*, 2014 U.S. Dist. LEXIS at *13-17.  During his misconduct hearing, it appears that Robinson raised the retaliation issue during his misconduct hearing when he stated that "This is because I grieve you fuckers."[7]  (ECF No. 30-5, PageID.279.)   The inference is that Robinson received the misconduct ticket because he complained about Benson, the issuing officer, in a grievance.   Then, as shown below, Robinson appealed his guilty finding by asserting that Benson wrote this misconduct ticket because Robinson wrote past grievances.   (ECF No. 36-2, PageID.361.)    As can be seen below, in his appeal, Robinson wrote, "this false misconduct was in retaliation for grievances."

---

[7]      A/Lt. Pawley describes the statement as being to "degrade the reporting officer and [that] it has no other purpose."  (ECF No. 30-5, PageID.279.)  Pawley's description seems at odds with Robinson's choice of words and context of the statement.

D263   4/10/18   *Exhibit N*

MICHIGAN DEPARTMENT OF CORRECTIONS
CLASS II AND CLASS III MISCONDUCT APPEAL

CSJ-274
10/10
4835-3274

**INSTRUCTIONS:**
1. This form is to be used SOLEY for appealing Class II and Class III hearing decisions. If a Class II or Class III decision was combined with a Class I hearing decision, a Request for Rehearing (CSJ-418) must be filed.
2. This form must be submitted within 15 calendar days after receipt of the hearing officer's written decision.
3. Class II hearing decisions are appealed to the Deputy Warden.
4. Class III hearing decisions are appealed to the Assistant Deputy Warden (ADW). (NOTE: Prisoners at Woodland Center Correctional Facility (WCC) and the Women's Huron Valley Correctional Facility (WHV) appeal to a Captain designated by the Warden.)
5. State your reason for appeal.
6. Attach a copy of misconduct and hearing report.

A rehearing shall be ordered if any of the following are found to have occurred:
   a. The hearing was not conducted pursuant to Department policies and procedures and the departure from policy and procedure resulted in material prejudice to the prisoner.
   b. The prisoner's due process rights were violated.
   c. The decision of the hearing officer is not supported by the evidence on the record.

| Prisoner's Number | Name | Block/Unit Number | Cell/Room Number | Date of Incident |
|---|---|---|---|---|
| 603273 | Albert Robinson | D | 263 | 3-9-18 |

| Date of Hearing | Misconduct Class: ☒ II ☐ III Charge(s) | Sentence |
|---|---|---|
| 3-12-18 | | 5 days Top Lock |

BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL: I was not in possession of the polyester stuffing, it was under the bunk and had been since I moved in the cube in August 2017, I never stated "This is because I grieve you fuckers" Its apparent this is a lie because I am a Black person, I would not have stated the word "fuckers" thats white language. But I did write 3 grievances on officer Olmstead and a complaint sent to warden Horton regarding racism from Benson, the statement that I stated I "rode in from kansas with pillow stuffing" is ridiculas Benson is apparently lying. This false misconduct was in retaliation for grievances.

also: I kited the hearing investigator 3 times, starting from 3-16-18, and only received this appeal form on 4-6-18 well past the deadline. So the hearing Investigator refused to send me the form in order to deny me access to the court. So I talked to my Arus Newton about not recieving the forms in a timely manner. I will file a grievance regarding this matter, but if the warden processes this late submission I will sign-off.

(do not write below this line)

APPEAL RESPONSE:

THIS HEARING WAS HELD IN ACCORDANCE WITH ADMINISTRATIVE RULE 791.3310 AND POLICY DIRECTIVE 03.03.105. THE HEARINGS OFFICER DETERMINED BY A PREPONDERANCE OF THE EVIDENCE THAT THE PRISONER WAS GUILTY OF THE STATED CHARGE. THE PRISONER HAS NOT PROVIDED ANY SUBSTANTIATED EVIDENCE THAT WOULD WARRANT OVERTURNING THIS HEARING. NO DUE PROCESS VIOLATION EXISTS.
APPEAL IS DENIED.

☒ Disapproved   ☐ Approved   ☐ Returned without action – not filed within 15 days

| Signature of Warden/Deputy Warden (Class II); Signature of ADW/WCC/WHV Captain (Class III) | Date |
|---|---|
| | 4-16-18 |

DISTRIBUTION: WHITE – Deputy Warden (Class II); ADW/WCC/WHV Captain (Class III); CANARY – Retained by Prisoner

Because Robinson raised the issue of retaliation during his misconduct hearing and on appeal, the undersigned concludes that there is no genuine issue of material fact that Robinson properly exhausted his First Amendment retaliation claim against Benson.

### IX. Motion for Summary Judgment: Defendant's Qualified Immunity Argument

Defendants also argue that they are entitled to summary judgment because the doctrine of qualified immunity shields Benson and Olmstead from liability where Robinson claims that he has a constitutional right to watch preferred television channels or in having the barracks door kept closed.  (ECF No. 30, PageID.148.) Defendants' argument misinterprets – understandably so – the claims that Robinson alleges in his Verified Complaint.[8]  As summarized in Section II of this Report and Recommendation, Robinson does not allege that he has a constitutional right to watch a preferred television channel or has a right to have the barracks door closed. Robinson appears to allege that Olmstead and Benson violated his right to equal protections under the Fourteenth Amendment by making decisions on which television channel to display and whether to keep a door open on the basis of race, favoring the requests of White inmates over the requests of African-American inmates.

Because Defendants misconstrue Robinson's claims, the undersigned concludes that Defendants' motion regarding qualified immunity should be denied.

### X. Motions to Compel Discovery

Robinson filed two motions to compel discovery.  (ECF No. 38, PageID.365; ECF No. 40, PageID.385.)  In the second motion, Robinson seeks the same discovery

---

[8]   Robinson also appears to be confused about what claims he alleges in his Verified Complaint because he filed a motion asking the Court to identify his cognizable claims.  (ECF No. 34, PageID.326.)

material and expands upon his arguments in his first motion. (ECF No. 40, PageID.385.) Because Defendants responded to Robinson's first motion (ECF No. 39, PageID.367.), the second motion is better interpreted as a reply to Defendant's response.

Putting aside any issue involving Robinson filing duplicate motions, there are a host of issues regarding Robinson's discovery requests. First, Robinson's request for discovery material from Defendants was untimely. On August 1, 2019, the undersigned ordered Robinson to complete discovery limited to the exhaustion issue by September 15, 2019. (ECF No. 35, PageID.329.) Defendants argue that Robinson's discovery request was untimely because they did not receive the discovery request until September 16, 2019, the day after the deadline. (ECF No. 39, PageID.368.) Robinson does not dispute when Defendants received his request. (ECF No. 40, PageID.385.) Instead, Robinson argues that his request was timely because (1) he delivered the request to prison officials on September 9, 2019 – six days before the deadline – and (2) because he is only allowed a limited amount of time in the day to work in the prison's legal library. (ECF No. 40, PageID.385.) Robinson's argument misinterprets the order that discovery must be completed by September 15, 2019. By waiting to begin the mailing process so close to the deadline, Defendants' were prevented from responding prior to the deadline. Consequently, Robinson's motion should be denied because his discovery request was untimely.

Second, Robinson's discovery request exceeded the authorized scope of discovery, which was limited to the exhaustion issue. As indicated by Defendants,

Robinson's "request for production #2 seeks warden forum meeting minutes for a 2-year period which includes time after he had filed his complaint, and #3 broadly seeks 'any and all policies, directives or instructions concerning MDOC employee job description, prisoner treatment.'" (ECF No. 39, PageID.368 (citing ECF No. 39-1, PageID.372).)  In response, Robinson asserts that Fed. R. Civ. P. Rule 26(b)(1) allows discovery of non-privileged matters relevant to his claim.  (ECF No. 40, PageID.385.)  Robinson's argument misinterprets Rule 26(b)(1).  The rule states that it applies to the scope of discovery "[u]nless otherwise limited by court order."  Fed. R. Civ. P. 26(b)(1).  Here, the Court limited discovery to the issue of exhaustion.  (ECF No. 35, PageID.329.)  As such, Robinson's motion should be denied because his discovery requests exceeded the scope of the Court's order.

Third, Robinson filed his brief in response to Defendants' motion for summary judgment before he filed his motions to compel discovery.  (ECF No. 36, PageID.330.)  The purpose of the limited discovery was to allow the parties to properly brief the Court as to whether Robinson properly exhausted his claims against the Defendants.  To that end, the undersigned ordered that Robinson was free to file his response Defendants' motion by October 28, 2019.  (ECF No. 35, PageID.329.)  Robinson, instead, filed his response more than a month early on September 24, 2019.  (ECF No. 36, PageID.330.)  In doing so, Robinson rendered any further discovery on the exhaustion issue irrelevant.

The undersigned respectfully recommends that the Court deny Robinson's first motion to compel discovery for any of above reasons.  The undersigned also

respectfully recommends that the Court deny Robinson's second motion to compel discovery as moot.

The undersigned wishes to note that Robinson will be allowed an opportunity to conduct discovery on the merits of his remaining claims after the Court resolves Defendants' pending motion for summary judgment.

## XI.   Recommendation

The undersigned respectfully recommends that this Court (1) grant in part and deny in part Defendants' motion, (2) deny Robinson's two motions to compel discovery, and (3) dismiss without prejudice Robinson's conspiracy claims, his individual First Amendment retaliation claims against Newton and Olmstead, his First Amendment retaliation claim against Benson and Olmstead where they allegedly moved Robinson to the D housing unit, his individual Fourteenth Amendment equal protections claims against Newton, and his Fourteenth Amendment retaliation claim against Olmstead involving white inmates to watch their preferred television channels.  If the Court accepts this recommendation, the remaining claims are:

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Benson | 1st Amendment Retaliation | 3/9/2018 | Benson allegedly conducted an impermissible search of Robinson's belongings and then issued Robinson a false Class II misconduct ticket for Destruction or misuse of property and insolence.  In doing so, Benson allegedly told Robinson that he would keep issuing Robinson misconduct tickets if Robinson kept filing grievances.  (ECF No. 1, PageID.14.) |

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---------|-----------|-------|-----------------------------------|--------------------|
| 2 | Olmstead | 14th Amendment Equal Protections | 3/3/2018 | Allegedly Olmstead refused to close the backdoor of the housing unit near Robinson's and other black inmates' beds because a white inmate requested the door to remain open.  (ECF No. 1, PageID.13.) |

Dated:  March 9, 2020

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).